JUDGE CARTER

12 CIV 4029

Kenneth W. Taber
Kerry A. Brennan
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036
Tel. (212) 858.1723
Fax. (212) 858.1500




UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL BIOMETRIC GROUP, LLC,

Plaintiff,

- v. –

INTREPID SOLUTIONS AND SERVICES, INC. and STEPHEN G. HOOD,

Defendants.

___ Civ. ___ ( )

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff International Biometric Group, LLC ("IBG" or "Plaintiff"), by their counsel Pillsbury Winthrop Shaw Pittman LLP, as and for their Complaint against Defendants Intrepid Solutions and Services, Inc. ("Intrepid") and Stephen G. Hood ("Hood") (each a "Defendant" and collectively, the "Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1. IBG brings this suit to enjoin the misappropriation of its proprietary and confidential information by Defendants Intrepid and Hood, to enjoin Intrepid and Hood from unfairly competing with IBG and to seek all available remedies and damages. Upon information and belief, Intrepid and Hood are, within days, about to rely upon misappropriated IBG proprietary and confidential information in a competitive bid to be submitted to the United States Department of the Army, Intelligence and Security Command ("INSCOM"), National Ground

Intelligence Center ("NGIC") and related agencies (the "Government Intelligence Agencies"), at which point the bidding process for that project will be irreversibly tainted.

2. Hood gained access to IBG's proprietary and confidential information while employed at IBG as its Director of Military Intelligence and its Director of Business Development. Hood had, and still has, common law fiduciary and contractual obligations to preserve IBG's proprietary and confidential information. He also agreed not to compete with IBG for a period of 18 months following the cessation of his employment.

3. Hood ignored all of that in joining Intrepid last December and, upon information and belief, is now directly participating in bidding, on Intrepid's behalf, on a substantially similar project previously pursued for IBG and on which Hood had a lead role, this time armed with IBG's confidential and proprietary information.

4. Prior to his resignation from IBG to go to work for Intrepid, Hood was an essential IBG team member and the designated Program Manager for IBG's bid in response to the 2011 BI2 Project (as defined below). In that capacity, Hood had access to, and assisted IBG with the development of, its proprietary and confidential information for the 2011 BI2 Project.

5. Although IBG's bid on the 2011 BI2 Project was considered "one of the most highly rated bids," that bid process was cancelled without an award being issued. Hood thereafter departed IBG, as of December 30, 2011, and immediately joined Intrepid, an IBG competitor. According to Intrepid's website, Hood is now Intrepid's Senior Director of Business Development.

6. IBG recently learned that Intrepid is now intending to submit a bid, this very week, for the 2012 BIP Project (as defined below), a project that seeks substantially the same services as the cancelled 2011 BI2 Project.

7. Upon information and belief, given Hood's experience in the military intelligence space and as the former Commander of the NGIC, one of the intended customers for identity intelligence services under the 2012 BIP Project, Hood has been, and is still, actively engaged in the preparation of Intrepid's bid for the 2012 BIP Project in direct competition with IBG. Upon information and belief, he and Intrepid are using IBG's proprietary and confidential information relating to the 2011 BI2 Project to do so.

8. Hood's involvement with the preparation of Intrepid's bid for the 2012 BIP Project and in any implementation of a contract awarded to Intrepid resulting from that solicitation violates Hood's contractual and common law duties to IBG. Intrepid's use of IBG's proprietary and confidential information in connection with a bid in response to the 2012 BIP Project likewise constitutes, *inter alia*, misappropriation of IBG's trade secrets and/or proprietary and confidential information and tortious interference with IBG's contract with Hood.

## THE PARTIES

9. Plaintiff IBG is a leading independent consulting firm in the biometric industry. IBG offers consulting services, research and solutions, relating specifically to identity intelligence services and technologies. It is a limited liability company formed under the laws of the State of New York, with its headquarters in New York, New York.

10. Defendant Intrepid provides professional services and technology solutions to defense and intelligence agencies of the federal government. Intrepid has an office in Virginia.

11. Defendant Hood is the former Director of Military Intelligence and Director of Business Development at IBG. He resigned from IBG as of December 30, 2011 and shortly thereafter Hood joined competitor Intrepid as Senior Director of Business Development. Hood resides in Virginia.

## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13. This Court has jurisdiction over the Defendants here because (i) Defendant Hood contractually agreed that IBG could bring suit in this Court under his Non-Disclosure and Non-Competition Agreement (defined later herein), (ii) any injury to IBG's trade secrets and/or proprietary and confidential information occurred or will occur in the State of New York where IBG maintains its principal place of business, and (iii) Defendants have committed tortious acts without the State of New York causing injury within the State of New York, expected or reasonably should have expected the acts to have consequences in the State of New York, and derive substantial revenue from interstate commerce.

14. Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff's trade secrets and/or proprietary and confidential information is deemed to be located at its principal place of business in New York and Defendants' actions were directed to a business headquartered in this district.

## FACTUAL BACKGROUND

**Background About IBG**

15. IBG, which is headquartered in New York City, is the leading independent consulting and integration firm in the biometric industry. It provides clients a broad range of biometric services and solutions, ranging from network security and transaction systems to access-control and large-scale identification. These services and solutions include identity

intelligence and identity engineering, including fingerprint, facial recognition and iris-scan. Its clients are government agencies and private sector organizations.

16. IBG protects its proprietary and confidential information with respect to its services and products by regularly requiring its employees to execute confidentiality and non-disclosure agreements.

17. In 2011, IBG recruited Hood to serve as its Director of Military Intelligence and its Director of Business Development. Prior to joining IBG, Hood had over 25 years of military intelligence experience at tactical, operational and strategic levels.

**Hood Joins IBG and Executes the Non-Disclosure and Non-Competition Agreement**

18. Hood joined IBG on April 21, 2011 and was paid a signing bonus and a substantial annual salary. Subsequently, IBG also hired support staff for him.

19. At the time of his hire, Hood executed an Employee Non-Disclosure and Non-Competition Agreement (the "Non-Disclosure and Non-Competition Agreement") in which he agreed never to disclose IBG's proprietary and confidential information. That Non-Disclosure and Non-Competition Agreement provides, in relevant part:

> 1. Confidential Information. ... Confidential Information includes, but is not limited to, technical and systems data, product/services information and specifications and all development, sales and financial information, customer lists, research, computer hardware and software data, drawings, trade secrets, operating procedures, marketing strategies, pricing methods, educational material, Comparative Biometric Testing results, and all information pertaining to IBG's work for clients, regardless of whether any such information is oral, written or stored electronically or by any other means.
>
> 2. Non-Disclosure. [Hood] agrees not to disclose or use Confidential Information without IBG's prior written permission except while employed by IBG and only to the extent necessary to perform services on IBG's behalf. Upon IBG's request, [Hood] shall deliver to IBG all Confidential Information materials in [Hood]'s possession to IBG. Immediately upon the termination of employment for any reason, [Hood]

> shall return all Confidential Information materials to IBG and shall not disclose or use such Confidential Information for any purpose whatsoever.
>
> 6. Non-Competition. While employed by IBG, and for a period of eighteen months following the cessation of the employment with IBG for any reason, [Hood] shall not, either directly or indirectly, call on or solicit, or attempt to call on or solicit, any of IBG's past, present, or prospective clients, in any manner which is competitive with IBG's business. For a period of eighteen months following the cessation of employment with IBG for any reason, [Hood] shall not, either for [Hood] or on behalf of another organization, provide biometric research, consulting or integration services.
>
> 7. Remedies. In the event of a breach or threatened breach of any of the provisions of this Agreement by Party, IBG shall be entitled to preliminary and permanent injunctive relief to enforce the provisions hereof. …

**IBG Submits Bid for 2011 BI2 Project Designating Hood as Program Manager**

20. In the first quarter of 2011, prior to the hiring of Hood, IBG was preparing a bid in response to a INSCOM Solicitation for Biometric Identity Intelligence Services (Solicitation No. W911W4-11-R-0004) (the "2011 BI2 Project"). One of the prime reasons IBG sought to hire Hood was, in fact, to lead IBG's bid for the BI2 Project and any contract subsequently awarded.

21. The solicitation for the 2011 BI2 Project sought a complete range of coordinated biometric technical and professional support services for intelligence integration and integration of emerging technologies on behalf of the Department of the Army's INSCOM. The services sought included identification of critical intelligence gaps, development and application of fixes, development of theater/regional watch lists and development of products that would enhance identity intelligence efforts.

22. In late February and early March 2011, anticipating his employment with IBG, Hood prepared a resume for submission by IBG with its bid, in response to the solicitation for

the 2011 BI2 Project. On or about March 15, 2011, IBG submitted Hood's resume, together with its bid, and designated Hood as IBG's Program Manager for the BI2 Project.

23. After he joined IBG, Hood played a key role in leading and supporting IBG's bid for the BI2 Project. He was integral in developing IBG's strategy; he led the oral presentation to INSCOM in October 2011; he was a key figure in a planning session with IBG teammates in November 2011; and he was intimately involved in developing IBG's final bid proposal.

24. Throughout this process, Hood had access to, utilized and assisted in the development of, IBG's confidential and proprietary information in connection with its bid on the BI2 Project, including IBG's:

- pricing strategy, including IBG's overhead, general administrative costs, fringe rates and fees;
- strategy for defeating competitors and the subcontractors used by those competitors;
- strategy for differentiating IBG from the incumbent contractor for identity intelligence services to the Government Intelligence Agencies;
- technical and management approach to the services which were the subject of the bid;
- project staffing, including the approximately 130 individuals specifically named in bid; and
- the comments IBG received from INSCOM on the bid and IBG's strategic response.

25. All of this proprietary and confidential information is protected from disclosure under Hood's Non-Disclosure and Non-Competition Agreement.

26. IBG's proprietary and confidential information relating to the 2011 BI2 Project was developed at considerable cost and expense to IBG.

27. IBG's proprietary and confidential information relating to the 2011 BI2 Project was known only to team members for that project. Such protected information would be extremely valuable to IBG's competitors because they could use the information to compete unfairly with IBG on pricing, strategy, types of intelligence services and products, technical and management approach, among others. Because IBG regularly requires its employees to sign confidentiality agreements and restricts proprietary and confidential information to team members for a particular project, IBG's proprietary and confidential information could not easily be acquired by third parties.

28. Approximately one week after Hood personally led IBG's oral presentation to INSCOM in October 2011, INSCOM notified IBG that its proposal was in the "competitive range as one of the most highly rated." IBG was asked to submit a final proposal revision ("FPR"), including all revisions from the initial proposal to the final proposal, as well as updated pricing sheets. IBG timely submitted that FPR.

29. On December 5, 2011, the solicitation for the BI2 Project was cancelled by the Government Intelligence Agencies because of changes in funding and program requirements.

**Hood Resigns from IBG to Join Competitor Intrepid**

30. On or about December 21, 2011, Hood notified IBG of his resignation, effective December 30, 2011, and of his intention to join IBG's competitor Intrepid.

31. On December 27, 2011, Kelli Boyer, IBG's Human Resources Manager, sent Hood a specific reminder, in writing, about his Non-Disclosure and Non-Competition Agreement.

32. On December 28, 2011, Raj Nanavati, a Partner and co-founder of IBG, personally corresponded with John Duncan, the Vice President of Intrepid, about the restrictions

on Hood's employment with Intrepid, as set forth in Hood's Non-Disclosure and Non-Competition Agreement with IBG.

33. On December 29, 2011, Ms. Boyer of IBG sent a letter to Lawrence Herbert, Chairman and Chief Executive of Intrepid, specifically advising Intrepid of the terms of Hood's Non-Disclosure and Non-Competition Agreement.

34. On January 5, 2012, Mr. Duncan, of Intrepid, sent Mr. Nanavati an e-mail addressing Hood joining Intrepid. Mr. Duncan stated, in part, "We recognize that the I2 opportunity [referring to the BI2 Project] is a special case which Steve [Hood] did pursue on behalf of IBG .... As you may be aware, Intrepid bid on I2 as well, obviously without any involvement by Steve [Hood]. If a new version of the I2 opportunity is announced, we expect Intrepid to bid on it, but we will consider the situation carefully before involving Steve in that effort in order to be certain that none of IBG's rights are violated in the process."

35. On Intrepid's website, Hood is now identified as Intrepid's Senior Director of Business Development. He is apparently the number two person on Intrepid's management team, subordinate only to Intrepid's CEO. He held the very same position — Director of Business Development — at IBG.

**In April 2012, A New NGIC Solicitation Issues for Substantially the Same Identity Intelligence Services**

36. In April 2012, a new solicitation was issued by the NGIC, entitled Solicitation for Biometric Intelligence Program ("BIP") Analysis Support Services for NGIC (Solicitation No. W911W5-12-R-0003) (the "2012 BIP Project).

37. Just like the 2011 BI2 Project, the 2012 BIP Project is intended to obtain identity intelligence services and support for Government Intelligence Agencies. The solicitation states that the contractor is to perform, among other things, identity intelligence and biometric-enabled

intelligence research, analysis, and production in accordance with BIP priorities and procedures as well as "support for management of the Biometric-Enabled Watchlist ... or other ... watchlists or other watchlisting type products which provide a method for operationalizing the output of biometric-enabled intelligence."

38. The scope of services and products sought in the 2011 BI2 Project and the 2012 BIP Project are substantially similar. Indeed, the 2012 BIP Project could be characterized as a subset of the same services and products as the 2011 BI2 Project.

39. In mid-May 2012, Mr. Nanavati learned that Intrepid would be submitting a bid for the 2012 BIP Project.

40. It is inconceivable that Hood is not assisting Intrepid with the preparation of its bid for the 2012 BIP Project because of Hood's substantial experience in military intelligence and, in particular, as the former Commander of the NGIC, the agency issuing the solicitation for the identity intelligence services covered by the 2012 BIP Project.

41. Given Hood's extensive knowledge about, and access to, IBG's proprietary and confidential information relating to the 2011 BI2 Project, there is a clear danger that Hood will use and disclose to Intrepid IBG's proprietary and confidential information in connection with its bid for the 2012 BIP Project. Hood's involvement in any way with the preparation of Intrepid's bid for the 2012 BIP Project (including but not limited to any involvement with teaming partners, proposal strategy, or proposal review), or in Intrepid's implementation of any contract awarded to Intrepid resulting from such solicitation, would undeniably violate Hood's contractual and common law duties to IBG. IBG has no adequate remedy at law for such a violation because it will irretrievably taint the bidding process.

## COUNT ONE

## DECLARATORY JUDGMENT
**(against Intrepid and Hood)**

42. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 41 inclusive as if fully set forth herein.

43. Hood was the Director of Military Intelligence and Director of Business Development at IBG. As an integral team member and designated Program Manager for the 2011 BI2 Project, Hood had extensive knowledge about, and access to, all of IBG's proprietary and confidential information relating to such project, which information was developed at considerable cost and expense to IBG.

44. IBG took precautionary measures to maintain its proprietary and confidential information as confidential and such information constitutes a trade secret.

45. Hood, under both his common law fiduciary duties to IBG and the Non-Disclosure and Non-Competition Agreement, is obligated to preserve, and not to disclose to any other party, IBG's proprietary and confidential information following the cessation of his employment.

46. Upon information and belief, Hood also has breached, or there is an imminent risk that Hood will breach, his contractual obligation to IBG by directly or indirectly soliciting business from prospective clients of IBG, including Government Intelligence Agencies on a project that is substantially similar to the 2011 BI2 Project for which Hood was a lead participant in soliciting business on behalf of IBG.

47. Hood joined competitor Intrepid which is now intending to submit a bid in response to the 2012 BIP Project which is substantially similar to, and a subset of, the 2011 BI2 Project for which Hood was designated as IBG's Program Manager and was an essential team

member. Given Hood's experience and current role at Intrepid, there is a clear danger that Hood will be involved in Intrepid's preparation of its bid in response to the 2012 BIP Project and either he has used and disclosed, or there is an imminent risk that he will use and disclose, IBG's proprietary and confidential information.

48. Plaintiff has no adequate remedy at law to prevent the use and disclosure of its proprietary and confidential information by Hood in his employment at Intrepid.

49. Plaintiff is entitled to a declaration that:

(i) Hood, as IBG's Director of Military Intelligence and Director of Business Development, and as an integral team member for the 2011 BI2 Project, had extensive knowledge about and access to IBG's proprietary and confidential information;

(ii) IBG's proprietary and confidential information relating to the 2011 BI2 Project constitutes a trade secret;

(iii) the Non-Disclosure and Non-Competition Agreement is a valid contract;

(iv) there is a clear danger that Hood has used and disclosed, or will use and disclose, IBG's confidential information in connection with his employment at Intrepid and/or Intrepid's bid for the 2012 BIP Project, and other projects, in violation of the non-disclosure and non-compete provisions in his Non-Disclosure and Non-Competition Agreement and his fiduciary duties;

(v) Defendants Intrepid and Hood shall be enjoined from using any of IBG's proprietary and confidential information, including but not limited to, any and all proprietary and confidential information relating to IBG's bid with respect to the 2011 BI2 Project;

(vi) Defendant Hood shall be enjoined from directly or indirectly attempting to solicit, or soliciting, the Government Intelligence Agencies with respect to any bid, contract or business opportunity for services and/or products the same as, or the functional equivalent to, those included in the 2011 BI2 project for a period though and including June 30, 2013;

(vii) Defendant Hood shall be enjoined from participating directly or indirectly in (a) the preparation of any bid by Intrepid with respect to the 2012 BIP Project, (b) the bid process for the 2012 BIP Project and (c) the execution by Intrepid of any contract awarded to it for the 2012 BIP Project;

(viii) if Defendant Hood has participated in any way in the preparation of the bid for the 2012 BIP Project (including, but not limited to, any involvement with teaming partners, proposal strategy, or proposal review), Defendant Intrepid shall be enjoined from directly or indirectly submitting a bid for the 2012 BIP Project; and

(ix) Defendant Intrepid shall be enjoined from directly or indirectly designating Hood as a Program Manager, lead, advisor or any other position, for, or involving Hood in any way in connection with, its bid, bid process or any contract awarded to Intrepid for the 2012 BIP Project.

## COUNT TWO

## BREACH OF CONTRACT
**(against Hood only)**

50. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 49 inclusive as if fully set forth herein.

51. The Non-Disclosure and Non-Competition Agreement constitutes a binding contract between IBG and Hood.

52. IBG has performed and discharged all of its obligations and conditions to be performed and discharged under the Non-Disclosure and Non-Competition Agreement.

53. Upon information and belief, Hood has breached his contractual obligation to IBG by using and disclosing to Intrepid IBG's proprietary and confidential information relating to IBG's bid for the 2011 BI2 Project.

54. Upon information and belief, Hood also has breached, or there is an imminent risk that Hood will breach, his contractual obligation to IBG by directly or indirectly soliciting business from prospective clients of IBG, including Government Intelligence Agencies on a project that is substantially similar to the 2011 BI2 Project for which Hood was a lead participant in soliciting business on behalf of IBG.

55. Hood's breach of the Non-Disclosure and Non-Competition Agreement has caused, is causing, and, unless enjoined, will continue to cause, irreparable injury to IBG.

56. IBG has no adequate remedy at law for the irreparable injury caused by Hood's wrongful conduct.

57. IBG demands a prohibitory injunction temporarily, preliminarily and permanently enjoining Hood from disclosing any of IBG's proprietary and confidential information, including, but not limited to IBG's proprietary and confidential information relating to IBG's bid for the 2011 BI2 Project, consistent with the terms of the Non-Disclosure and Non-Competition Agreement and Hood's fiduciary duties to IBG.

58. IBG demands a prohibitory injunction temporarily, preliminarily and permanently enjoining Hood for a period of eighteen months following the cessation of Hood's

employment with IBG and until June 30, 2013, from soliciting or attempting to solicit directly or indirectly any Government Intelligence Agency with respect to any bid, contract or business opportunity for services that are the same as, or the functional equivalent of, those included in the 2011 BI2 Project until June 30, 2013.

59. IBG also demands any and all damages caused by Hood's breach of his Non-Disclosure and Non-Competition Agreement in an amount to be determined at trial.

**COUNT THREE**

**BREACH OF FIDUCIARY DUTY OF LOYALTY**
**(against Hood only)**

60. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 59 inclusive as if fully set forth herein.

61. As a former Director of Military Intelligence and Director of Business Development for IBG, Hood had and still has a continuing fiduciary duty of loyalty to maintain as confidential and not to disclose IBG's proprietary and confidential information, including proprietary and confidential information relating to IBG's bid for the 2011 Solicitation for the BI2 Project, which information was developed at considerable cost and expense to IBG.

62. Upon information and belief, Hood has used or disclosed, or there is an imminent risk that Hood will use or disclose, IBG's proprietary and confidential information relating to IBG's bid for the 2011 BI2 Project in connection with Intrepid's intended bid on the nearly identical 2012 BIP Project.

63. Upon information and belief, Hood's conduct is knowing, malicious and with reckless disregard for IBG's rights.

64. Upon information and belief, as a direct and proximate result of Hood's breach of his duty of loyalty, IBG has been and/or will be damaged.

65. Upon information and belief, IBG has suffered and/or will suffer substantial, immediate, and irreparable injury as a result of Hood's actions if such actions are not enjoined by this Court.

66. IBG is without an adequate remedy at law for the irreparable injury caused by Hood's wrongful conduct.

67. IBG also demands any and all damages caused by Hood's breach of fiduciary duty of loyalty in an amount to be determined at trial.

68. As a result of Hood's intentional, malicious and/or reckless conduct, Hood is also entitled to recover punitive damages.

**COUNT FOUR**

**MISAPPROPRIATION OF TRADE SECRETS**
**(against Intrepid and Hood)**

69. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 68 inclusive as if fully set forth herein.

70. IBG has a protectable interest in its proprietary and confidential information, including, but not limited to, its proprietary and confidential information relating to IBG's bid for the 2011 BI2 Project, which was developed at considerable cost and expense to IBG.

71. For the reasons stated herein IBG's proprietary and confidential information relating to the 2011 BI2 Project constitutes a trade secret.

72. Upon information and belief, Hood has disclosed to Intrepid or used for Intrepid's behalf, or there is an imminent risk that Hood will use for Intrepid's benefit or disclose to Intrepid, IBG's proprietary and confidential information relating to the 2011 BI2 Project in connection with Intrepid's intended bid on the substantially similar 2012 BIP Project.

73. Upon information and belief, unless enjoined, Intrepid and Hood will wrongly use IBG's proprietary and confidential information relating to IBG's bid on the B12 Project. Intrepid's and Hood's conduct, unless enjoined, will cause irreparable harm to IBG.

74. Upon information and belief, Intrepid's and Hood's wrongful use of IBG's trade secrets was knowing, malicious and with reckless disregard of IBG's rights.

75. IBG has no adequate remedy at law for the irreparable harm caused by Intrepid's and Hood's wrongful conduct.

76. IBG also demands any and all damages, including punitive damages, caused by Intrepid's and Hood's misappropriation of IBG's trade secrets in an amount to be determined at trial.

## COUNT FIVE

## MISAPPROPRIATION OF PROPRIETARY AND CONFIDENTIAL INFORMATION
**(against Intrepid and Hood)**

77. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 76 inclusive as if fully set forth herein.

78. IBG has a protectable interest in its proprietary and confidential information, including, but not limited to, its proprietary and confidential information relating to IBG's bid for the 2011 BI2 Project, which was developed at considerable cost and expense to IBG.

79. Upon information and belief, Hood has disclosed to Intrepid or used for Intrepid's behalf, or there is an imminent risk that Hood will use for Intrepid's benefit or disclose to Intrepid, IBG's proprietary and confidential information relating to the 2011 BI2 Project in connection with Intrepid's intended bid on the substantially similar 2012 BIP Project.

80. Upon information and belief, unless enjoined, Intrepid and Hood will wrongly use IBG's proprietary and confidential information relating to 1BG's bid on the B12 Project. Intrepid's and Hood's conduct, unless enjoined, will cause irreparable harm to IBG.

81. Upon information and belief, Intrepid's and Hood's wrongful use of IBG's proprietary and confidential information was knowing, malicious and with reckless disregard of IBG's rights.

82. IBG has no adequate remedy at law for the irreparable harm caused by Intrepid's and Hood's wrongful conduct.

83. IBG also demands any and all damages, including punitive damages, caused by Intrepid's and Hood's misappropriation of IBG's proprietary and confidential information in an amount to be determined at trial.

**COUNT SIX**

**UNFAIR COMPETITION**
**(against Intrepid and Hood)**

84. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 83 inclusive as if fully set forth herein.

85. IBG has a protectable interest in its proprietary and confidential information, including, but not limited to, its proprietary and confidential information relating to IBG's bid for the 2011 BI2 Project, which was developed at considerable cost and expense to IBG.

86. Upon information and belief, Hood has used or disclosed, or there is an imminent risk that Hood will use or disclose, IBG's proprietary and confidential information relating to IBG's bid for the 2011 BI2 Project in connection with Intrepid's intended bid on the substantially similar 2012 BIP Project.

87. Upon information and belief, unless enjoined, Intrepid and Hood will unfairly compete with IBG through the wrongful use of IBG's proprietary and confidential information relating to IBG's bid on the BI2 Project. Intrepid and Hood's conduct, unless enjoined, will cause irreparable harm to IBG.

88. IBG has no adequate remedy at law for the irreparable injury caused by Intrepid's and Hood's wrongful conduct.

89. IBG also demands any and all damages caused by Intrepid's and Han's unfair competition in an amount to be determined at trial.

**COUNT SEVEN**

**TORTIOUS INTERFERENCE WITH CONTRACT**
**(only against Intrepid)**

90. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 89 inclusive as if fully set forth herein.

91. Intrepid was aware of IBG's and Hood's Non-Disclosure and Non-Competition Agreement. Intrepid was also aware that Hood undertook a leading role in IBG's development of its bid for the 2011 BI2 Project.

92. Upon information and belief, Intrepid was aware that Hood knew and had access to IBG's proprietary and confidential information relating to IBG's bid on the 2011 BI2 Project, which was developed at considerable cost and expense to IBG.

93. Upon information and belief, Intrepid, by involving Hood in the preparation of its bid for the 2012 BIP Project knew or should have known that Hood would inevitably use or disclose IBG's proprietary and confidential information relating to IBG's bid on the nearly identical 2011 BI2 Project on which Hood was a lead participant and IBG's designated Program Manager.

94. IBG has no adequate remedy at law for the irreparable injury caused by Intrepid's wrongful conduct.

95. IBG also demands any and all damages caused by Intrepid's tortious interference with IBG's and Hood's Non-Disclosure and Non-Competition Agreement.

96. IBG also demands any and all damages caused by Intrepid and Hood's interference with IBG's prospective economic advantage.

WHEREFORE, Plaintiff IBG requests the following relief:

(i) A declaration that:

(a) Hood, as IBG's Director of Military Intelligence and Director of Business Development, and as an integral team member for the 2011 BI2 Project, had extensive knowledge about and access to IBG's proprietary and confidential information;

(b) IBG's proprietary and confidential information relating to the 2011 BI2 Project constitutes a trade secret;

(c) the Non-Disclosure and Non-Competition Agreement is a valid contract;

(d) there is a clear danger that Hood has used and disclosed, or will use and disclose, IBG's confidential information in connection with his employment at Intrepid and/or Intrepid's bid for the 2012 BIP Project, in violation of the non-disclosure and non-compete provisions in his Non-Disclosure and Non-Competition Agreement and his fiduciary duties;

(e) Defendants Intrepid and Hood shall be enjoined from using any of IBG's proprietary and confidential information, including but not limited to, any and all proprietary and confidential information relating to IBG's bid with respect to the 2011 BI2 Project;

(f) Defendant Hood shall be enjoined from directly or indirectly attempting to solicit, or soliciting, the Government Intelligence Agencies with respect to any bid, contract or business opportunity for services and/or products the same as, or the functional equivalent to, those included in the 2011 BI2 project for a period though and including June 30, 2013;

(g) Defendant Hood shall be enjoined from participating directly or indirectly in (a) the preparation of any bid by Intrepid with respect to the 2012 BIP Project, (b) the bid process for the 2012 BIP Project and (c) the execution by Intrepid of any contract awarded to it for the 2012 BIP Project;

(h) if Defendant Hood has participated in any way in the preparation of the bid for the 2012 BIP Project (including, but not limited to, any involvement with teaming partners, proposal strategy, or proposal review), Defendant Intrepid shall be enjoined from directly or indirectly submitting a bid for the 2012 BIP Project; and

(i) Defendant Intrepid shall be enjoined from directly or indirectly designating Hood as a Program Manager, lead, advisor or any other position, for, or involving Hood in any way in connection with, its bid, bid process or any contract awarded to Intrepid for the 2012 BIP Project.

(ii) a prohibitory injunction temporarily, preliminarily and permanently enjoining Intrepid and Hood from using or disclosing any of IBG's proprietary and confidential information, including, but not limited to IBG's proprietary and confidential information relating to IBG's bid for the 2011 BI2 Project consistent with the terms of the Non-Disclosure and Non-Competition Agreement and Hood's fiduciary duties to IBG;

(iii) a prohibitory injunction temporarily, preliminarily and permanently enjoining Hood for a period of eighteen months following the cessation of Hood's employment with IBG until June 30, 2013, from soliciting or attempting to solicit directly or indirectly any Government Intelligence Agency with respect to any bid, contract or business opportunity for services that are the same as, or the functional equivalent of, those included in the 2011 BI2 Project until June 30, 2013;

(iv) an award to IBG of damages arising from Hood's breach of contract;

(v) an award to IBG of damages arising from Intrepid's and Hood's unfair competition;

(vi) an award to IBG of damages arising from Intrepid's tortious interference with IBG's and Hood's Non-Disclosure and Non-Competition Agreement;

(vii) an award to IBG of damages and punitive damages arising from Hood's breach of his fiduciary duties;

(viii) an award to IBG of damages and punitive damages from Intrepid's and Hood's misappropriation of IBG's trade secrets and misappropriation of proprietary and confidential information; and

(ix) such other and further relief in law and equity as to which Plaintiff may be entitled.

Dated: May 21, 2012

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: Kerry A. Brennan

Kenneth W. Taber
Kerry A. Brennan
1540 Broadway
New York, NY 10036
Tel. (212) 858.1723
Fax. (212) 858.1500



403490043v3